33 C.C.P.A.(Patents)

## In re SWAIN.
### Patent Appeals No. 5199.

Court of Customs and Patent Appeals.

June 11, 1946.

James Edwin Archer, of Stamford, Conn., for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting claims 1, 2, 3, 8 and 9 of an application for a patent for "Purification and Stabilization of Formaldehyde." The examiner allowed claims 6 and 7, and claims 4 and 5, rejected by him, were allowed by the board.

Claims 1, 2, 3, 8 and 9 were rejected by both the examiner and the board as unpatentable over either of the patents to Griessbach et al., 2,223,930, December 3, 1940, and 2,228,514, January 14, 1941. Claims 8 and 9 were further rejected as drawn to non-elected subject matter. Those claims were properly rejected for the reason that in our opinion the generic claim, 1, was properly held to be unpatentable. This leaves for our consideration claims 1, 2, and 3, which read as follows:

"1. In a process of purifying aqueous solutions of formaldehyde contaminated with ionic impurities, the step which includes contacting an aqueous solution containing formaldehyde and a contaminating anion with an anion active material, thereby obtaining a solution which does not contain any substantial amount of the contaminating anion.

"2. A process for purifying aqueous solutions of formaldehyde contaminated with ionic impurities which includes the steps of passing a solution of formaldehyde and a contaminating cation through a cation active material, collecting the effluent which does not contain any substantial amount of the contaminating cation, passing the collected effluent through an anion active material, and collecting from the anion active material the effluent which does not contain any substantial amount of contaminating anions.

"3. A process for purifying aqueous solutions of formaldehyde contaminated with ionic impurities which includes the steps of passing a solution of formaldehyde and a contaminating anion through an anion active material, collecting the effluent which does not contain any substantial amount of the contaminating anion, passing the collected effluent through a cation active material, and collecting from the cation active material the effluent which does not contain any substantial amount of contaminating cations."

The application relates to the removal of ionic impurities, which may be of two clauses, anions and cations, from aqueous solutions of formaldehyde by treating them with resinous materials known as anion or cation exchange materials.

The patents to Griessbach et al. show resinous anion and cation exchange ma-

terials used in removing anion and cation impurities from solutions.

The processes of the prior art are not challenged in appellant's brief, the contention being there stated that the patents, while they show anion active materials or anion exchangers useful in removing anions (the acid ions) from water, they do not show the removal of such impurities from aqueous solutions containing such chemically reactive materials as formaldehyde. Appellant argues that one skilled in the art would assume that such solutions would dissolve the anion active resins instead of purifying them or cause contamination, for the reason that, he states, in the removal of impurities from aqueous solutions of formaldehyde the action of the anion exchangers in the prior art could not be predicted.

In support of his contention he cited the patent to Ripper, No. 1,817,931, in which it is shown that certain resins, not those of the Griessbach et al. patents, may be dissolved in a formaldehyde solution. It is stated in that patent that it has been the general opinion that final resin products "are insoluble in the usual solvents." The patentee includes formaldehyde, however, as a usual solvent. In pointing out that certain resins may be dissolved in formaldehyde, it is stated that such resins must be "in a fine state of division" and "with heat." It would seem that in the opinion of the patentee formaldehyde as a usual solvent might dissolve certain resins under certain conditions, and therefore we do not think he suggests that it was impossible to use resins in a formaldehyde solution for the purpose of removing impurities.

The Griessbach et al. patent 2,223,930 discloses the identical process as rejected claims 1, 2, and 3 with the exception that the process is applied to "water or the like." We think it reasonable that the expression "water or the like" would be understood by one skilled in the art as including an aqueous solution of formaldehyde. There is nothing in any of the rejected claims to show the ratio between the formaldehyde and water, and certainly the solutions as defined there would be much more "like" water than straight formaldehyde.

With the exception of the Ripper patent there is nothing in the record supporting appellant's contention that the resins used in the Griessbach et al. patents would ordinarily be classed as soluble in formaldehyde. Statements to that effect in the brief, without support in the record, cannot, of course, be considered.

█ It is clear to us that claims 1, 2 and 3 are unpatentable over either of the Griessbach et al. patents, and the decision of the board is affirmed.

Affirmed.

GARRETT, Presiding Judge, sat during the arguments of this case, but because of illness took no part in its consideration or in the decision.